**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NELSON ORTIZ,<br>Plaintiff,<br>v.<br>NURSE KIM, *et al.*,<br>Defendants. | Civil Action No. 24-10487 (SDW) (JSA)<br>**OPINION**<br>November 23, 2026 |

**WIGENTON**, District Judge.

Before this Court are Defendants Correctional Officer Taylor's Partial Motion to Dismiss (D.E. 41) and Rutgers, The State University of New Jersey's ("Rutgers" and together with Correctional Officer Taylor, the "Defendants") Motion to Dismiss (D.E. 43 and together with D.E. 41, the "Motions")) Plaintiff Nelson Ortiz's ("Plaintiff") First Amended Complaint (D.E. 29 ("AC")) pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6).[1] Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331, 1343, and 1367. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78 and Local Civil Rule 78.1. For the reasons stated herein, the Motions are **GRANTED**.

[1] Citations to "D.E." refer to docket entries in the Court's Electronic Case Filing System for this matter and any internal citations contained therein, unless otherwise indicated.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

On or about May 17, 2024, Plaintiff was incarcerated at Bayside State Prison in Leesburg, New Jersey while serving a five-year sentence. (AC ¶¶ 1, 18.) On that day, Plaintiff alleges that Defendant Correctional Officer Taylor kicked, struck, and slammed Plaintiff onto the ground as he waited to receive his medication. (*Id.* ¶¶ 20–23, 29–32.) The dispute arose after Defendant Taylor ordered Plaintiff to remove his hat, which he alleges he complied with. (*Id.* ¶ 23.) Plaintiff asserts that, as a result of the altercation, he "sustained lacerations to the inside of his mouth, began bleeding profusely, and lost consciousness." (*Id.* ¶ 33.)

Thereafter, Plaintiff contends that he did not receive "meaningful medical evaluation or treatment" from Rutgers, a medical services provider contracted by the New Jersey Department of Corrections ("NJDOC") to provide healthcare within Bayside State Prison. (*Id.* ¶¶ 5, 37–38.) As a result of the alleged assault and lack of medical attention and care, Plaintiff alleges he suffered a fractured tooth, facial lacerations and ongoing pain. (*Id.* ¶ 46.) Arising from this incident, Plaintiff was issued a disciplinary infraction and was sanctioned with 240 days in disciplinary housing. (*Id.* ¶¶ 47–48.) Plaintiff was transferred on May 29, 2024, and is now serving his sentence at Northern State Prison in Newark, New Jersey. (AC ¶¶ 1, 50.)

### B. Procedural Background

Plaintiff initiated this action on November 13, 2024. (D.E. 1.) Plaintiff amended his complaint on February 11, 2026, following the Court's grant of Plaintiff's motion for leave to a file an amended complaint and to join an additional party, Rutgers. (D.E. 25, 28, 29.)

The Amended Complaint is the operative pleading and alleges violations of the Eighth Amendment for excessive force (Count I), failure to intervene (Count II), deliberate indifference

to serious medical needs (Count III), and deliberate indifference/policy or custom (Count IV), all under 42 U.S.C. § 1983; and common law tort claims of assault and battery (Count V)[2] and intentional infliction of emotional distress (Count VI).[3] (AC ¶¶ 58–98.)

Defendants move to dismiss the Amended Complaint. (D.E. 41, 43.)[4] The parties timely completed briefing. (D.E. 40–41, 43–45, 47, 50–51.)

## II. **LEGAL STANDARD**[5]

Upon deciding a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim for which relief may be granted, federal courts "must accept as true all material allegations set forth in the complaint" and "construe those facts in favor of the nonmoving party." *Huertas v. Bayer US LLC*, 120 F.4th 1169, 1174 (3d Cir. 2024) (quoting *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012)). This analysis is

---

[2] The Complaint labels Counts V and VI as Counts IV and V, respectively. (AC ¶¶ 83–98.) This Court refers to them according to their proper numerical order in the Amended Complaint.

[3] Count II of the Complaint identifies "Defendant John/Jane Doe Correctional Officers," and Count III of the Complaint identifies Defendant Correctional Officer Miller and Defendant Nurse Kim. (AC ¶¶ 65–76.) It is not clear that Defendant Correctional Officer Miller, Defendant Nurse Kim, or the Defendant John/Jane Doe Correctional Officers have been served with the Amended Complaint. According to the docket, none of these Defendants have answered the Amended Complaint. Given these circumstances, this Court dismisses Counts II and III.

[4] In Defendant Taylor's partial motion to dismiss, he does not move to dismiss Count I brought against him in his individual capacity. (*See* D.E. 41-1 at 16.) Thus, this Opinion does not make any ruling as to that specific claim.

[5] Defendant Correctional Officer Taylor brings his Partial Motion to Dismiss (D.E. 41) pursuant to both Rules 12(b)(1) and 12(b)(6). A Rule 12(b)(1) motion to dismiss presents a factual attack when it "concerns the actual failure of a [plaintiff's] claims to comport [factually] with the jurisdictional prerequisites." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) (quoting *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008)). This Court, for a factual attack, is permitted to "make factual findings, beyond the pleadings, that [are] decisive to determining jurisdiction." *CNA*, 535 F.3d at 145. A Rule 12(b)(1) facial attack, on the other hand, "calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), *i.e.,* construing the alleged facts in favor of the nonmoving party." *Const. Party of Pa.*, 757 F.3d at 358. The distinction makes no substantive difference in this case.

twofold. First, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions" and second, must determine if those facts are "sufficient to show that the plaintiff" has pleaded a "plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).

A claim for relief must be "plausible on its face" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility standard does not necessitate a "probability requirement" but instead imposes "more than a sheer possibility that a defendant has acted unlawfully." *In re Schering Plough*, 678 F.3d at 243 (quoting *Iqbal*, 556 U.S. at 678). When evaluating a motion to dismiss, federal courts "may consider documents that are attached to or submitted with the complaint" or "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 1357 (4th ed. 2026)).

## I. DISCUSSION

### A. Eleventh Amendment Immunity

Plaintiff brings Claims I, V, and VI against Defendant Taylor in his official and individual capacities. (AC ¶¶ 58–64, 83–98.) As to those claims as they pertain to Defendant Taylor in his official capacity, he argues he cannot be held liable because he is entitled to absolute immunity under the Eleventh Amendment as an employee of the NJDOC, an arm of the State. (D.E. 41-1 at 14–15.)

The Eleventh Amendment of the United States Constitution provides:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI.

The Eleventh Amendment has been interpreted to "immunize an unconsenting state 'from suits brought in federal courts by her own citizens as well as by citizens of another state.'" *Fitchik v. N.J. Transit Rail Operations, Inc.*, 873 F.2d 655, 658–59 (3d Cir. 1989) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). Its protections extend to agencies and officials of the state "as long as the state is the real party in interest." *Id.* at 659.

The Third Circuit established a three-pronged test in *Fitchik v. New Jersey Transit Rail Operations, Inc.* to ascertain whether an entity or official is an "arm of the state" and thus "the real party in interest" protected by Eleventh Amendment immunity:

> (1) Whether the money that would pay the judgment would come from the state . . . (whether payment will come from the state's treasury, whether the agency has the money to satisfy the judgment, and whether the sovereign has immunized itself from responsibility for the agency's debts);
>
> (2) The status of the agency under state law (this includes four factors—how state law treats the agency generally, whether the entity is separately incorporated, whether the agency can sue or be sued in its own right, and whether it is immune from state taxation); and
>
> (3) What degree of autonomy the agency has.

*Id.* at 658–59.

It is understood by courts in this district that the NJDOC "stands in the shoes of New Jersey for sovereign immunity purposes" and is therefore considered as an "arm of the state." *Endl v. New Jersey*, 5 F. Supp. 3d 689, 697–98 (D.N.J. 2014) (quoting *Didiano v. Balicki*, 488 F. App'x 634, 638 (3d Cir. 2012)); *Fox v. Bayside State Prison*, 726 F. App'x 865, 867–68 (3d Cir. 2018) ("The DOC is quintessentially an arm of the state and is funded by, controlled by, and accountable to the state."). Similarly, correctional officers acting in their official capacity are "immune from

[prisoner civil rights suits] under the Eleventh Amendment" and thus cannot be "persons" under the meaning of Section 1983. *Potter v. Deputy Att'ys Under Abraham*, 304 F. App'x 24, 27 (3d Cir. 2008); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Such suits are not "against the official but rather [are] against the official's office" and are thus "no different from a suit against the State itself." *Will*, 491 U.S. at 71. Thus, Count I against Defendant Taylor in his official capacity is hereby dismissed.

Plaintiff also brings Claims V and VI against Defendant Taylor in his official capacity. (AC ¶¶ 83–98.) Under the New Jersey Tort Claims Act, a public entity is generally immune from liability "for an injury arising out of an act or omission of the public entity, a public employee, or any other person." *Endl*, 5 F. Supp. 3d at 698 (citing N.J. STAT. ANN. § 59:2-1). An employee of a public entity, such as a corrections officer, can share the State's immunity but not for claims based on that employee's "willful misconduct." N.J. STAT. ANN. § 59:3-14. Willful misconduct under New Jersey law requires "much more" than negligence and falls "somewhere on the continuum between simple negligence and the intentional infliction of harm." *Alston v. City of Camden*, 773 A.2d 693, 702 (N.J. 2001) (quoting *Fielder v. Stonack*, 661 A.2d 231, 242 (N.J. 1995)). While Counts V and VI allege conduct by Defendant Taylor that could support willful misconduct given "the context" of the factual allegations, they are entirely precluded (both in his official and individual capacities) on separate grounds for Plaintiff's failure to comply with the New Jersey statutory notice requirement as discussed *infra*. *See Fielder*, 661 A.2d at 242.

**B. Common Law Tort Claims (Counts V and VI)**

Plaintiff alleges tort claims for assault and battery (Count V) and intentional infliction of emotional stress (Count VI) against Defendant Taylor in both his official and individual capacities. (AC ¶¶ 83–98.) These claims are dismissed in their entirety because Plaintiff failed to comply

with the notice requirement prescribed by the New Jersey Tort Claims Act upon bringing the Amended Complaint.

The New Jersey Tort Claims Act requires a form of notice to be presented when an action is brought against a public entity or public employee thereunder within 90 days of accrual of a claim. N.J. STAT. ANN. § 59:8-8. The date of accrual is the day the tort occurs. *Beauchamp v. Amedio*, 751 A.2d 1047, 1050 (N.J. 2000) ("[I]n the case of tortious conduct resulting in injury, the date of accrual will be the date of the incident on which the negligent act or omission took place."). To satisfy the New Jersey Tort Claims Act, "[s]trict compliance is required . . . and the filing of a complaint is not a substitute for a notice of claim." *Baker v. Allen*, No. 03-2600, 2006 WL 1128712, at *16 (D.N.J. Apr. 24, 2006). If the claimant fails to present the requisite notice, the claimant waives the claim even if the defendant officer is not otherwise entitled to absolute immunity. *Panarello v. City of Vineland*, 160 F. Supp. 3d 734, 745 (D.N.J. 2016); N.J. STAT. ANN. § 59:8-8 (noting claimant's failure to file claim within 90 days of accrual of claim "forever bar[s] [them] from recovering against a public entity or public employee").

The doctrine of substantial compliance can relieve a claimant of this 90-day notice requirement under limited circumstances where "the notice, *although both timely and in writing*, had technical deficiencies that did not deprive the public entity of the effective notice contemplated by the statute." *D.D. v. Univ. of Med. & Dentistry of N.J.*, 61 A.3d 906, 923 (N.J. 2013) (emphasis added). To prove substantial compliance, the moving party must show: "(1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner's claim; and (5) a reasonable explanation why there was not strict compliance with the statute." *Panarello*, 160 F. Supp. 3d at 746 (quoting *Ferreira v. Rancocas Orthopedic Assocs.*, 836 A.2d 779, 783 (N.J. 2003)).

It is undisputed that correctional officer Defendant Taylor is a public employee of the NJDOC, a public entity. The date of accrual for Plaintiff under the New Jersey Tort Claims Act was the date of the incident, May 17, 2024. *Beauchamp*, 751 A.2d at 1050; (AC ¶¶ 19–32.) Yet Plaintiff failed to file notice within 90 days of the date of accrual by August 15, 2024, and he does not explain why he failed to do so. Plaintiff contends that because he was placed in isolation after the incident, he was restricted from information, communication, legal resources, and the opportunity to meaningfully investigate. (D.E. 44 at 14.) It is unclear to this Court how long Plaintiff was placed in isolation. Plaintiff's letter to the Governor indicates he was "thrown into a dry cell for four days." (D.E. 44-5 at 3.) However, nothing in the Amended Complaint, Motions, or documents appended thereto suggests Plaintiff was placed in isolation for longer than the 90-day notice period thereby foreclosing his ability to file a notice of tort claim.

Further, Plaintiff does not show the limited circumstances warranting substantial compliance: that notice was filed timely and in writing but with technical deficiencies. *Univ. of Med. & Dentistry of N.J.*, 61 A.3d at 923. Instead, Plaintiff relies on a June 17, 2024, report authored by the Special Investigations Division of the NJDOC (the "June 2024 Investigative Report") that indicates that the Special Investigations Division at Bayside State Prison received contemporaneous notification of the May 17, 2024, incident. (D.E. 44 at 9–11; D.E. 45 (Pl.'s Ex. B) at 2.) Plaintiff dually relies on his May 29, 2024, written request for assistance to the Office of the Corrections' Ombudsperson, also referenced in the June 2024 Investigative Report, in which he details the altercation with Defendant Taylor (the "Request for Assistance"). (D.E. 44 at 9–12; Pl.'s Ex. B at 5–6.)

Yet neither of these two documents resembles a notice of tort claim. First, the initial notification to Bayside State Prison was made not by Plaintiff or Plaintiff's counsel as required by

the statute but by a correctional police lieutenant who described the altercation as "an attempted assault on [Defendant Taylor] by [Plaintiff]."[6] (Pl.'s Ex. B at 2–3); *see* N.J. STAT. ANN. § 59:8-4 ("Contents of claim"). Second, while the Request for Assistance was written by Plaintiff and describes the altercation, it was not submitted to Bayside State Prison authorities directly, thereby failing to put them on notice of the incident, and rather was sent to the Office of the Corrections' Ombudsman, an independent branch of New Jersey Department of The Public Advocate. (Pl.'s Ex. B at 5–6); N.J. DEP'T OF CORR., UNDERSTANDING THE NEW JERSEY DEPARTMENT OF CORRECTIONS PRISON SYSTEM 11 (2020) ("Serving as a designated neutral, the Corrections Ombudsman is an advocate for fairness . . . ."); *contra Durham v. Dep't of Corr.*, No. 03-6101, 2005 WL 8175927, at *1 (D.N.J. Sep. 9, 2005) ("Plaintiff filed a Request for Administrative Remedy with two officials at New Jersey State Prison, namely . . . the Assistant to Superintendent . . . and . . . the Superintendent.").[7] Plaintiff was even advised by the County of Cumberland, Department of Law within the 90-day notice period that he had to file a tort claim notice, and he still failed to do so. (D.E. 44-3 at 2.)

---

[6] This Court notes that the June 2024 Investigative Report also states that an official at Bayside State Prison categorized Defendant Taylor's conduct as an "excessive level of force used," that administrative action was taken due to Defendant Taylor's policy violation, and that counseling for Defendant Taylor was recommended. (Pl.'s Ex. B at 6–10.) Further, on May 29, 2024, a week and a half after the incident, Plaintiff was transferred to Northern State Prison in Newark. (*Id.* at 5; *see also* AC ¶ 50.)

[7] Plaintiff's reliance on the two cases he cites is misplaced. In those cases, either a near contemporaneous letter was written by a prisoner's counsel, was sent to prison authorities directly, and adhered to the notice requirements, or a comparable form was written by the prisoner himself, was submitted to officials at the New Jersey state prison, and adhered to the notice requirements. *See Small v. Dep't of Corr.*, 579 A.2d 1263, 1265–66 (N.J. App. Div. 1990); *Durham*, 2005 WL 8175927, at *1–4 ("[Plaintiff's letter] identified that he suffered from a brutal beating, . . . had sixteen days of false detention, and that many personal items were missing.").

Altogether, Plaintiff's failure to file proper notice precludes his tort claims, and he fails to show substantial compliance with the notice requirement. *See Tedesco v. Borough of Haddonfield*, No. 24-09005, 2025 WL 3213688, at *7 (D.N.J. Nov. 18, 2025) (rejecting a finding of substantial compliance where "Plaintiffs have never filed anything resembling a notice of tort claim"; there is no reasonable explanation for lack of strict compliance; and because "Plaintiffs have cited no authority to support their contention that the notice of tort claim requirement is satisfied where the defendant has general knowledge of the [issue] or has investigated such issues, regardless of whether the injured party has attempted to provide notice to the public entity of a potential claim against it"). Accordingly, Counts V and VI in their entirety are hereby dismissed.

**C. *Monell* Claim (Count IV)**

Plaintiff brings Count IV, a deliberate indifference/policy or custom claim under 42 U.S.C. § 1983 for violation of Plaintiff's Eighth Amendment rights, against Defendant Rutgers. (AC ¶¶ 77–82.) To prevail on a *Monell* claim, a plaintiff must first establish that a municipality maintains a policy or custom that deprived the plaintiff of his or her constitutional rights. *See McTernan v. City of York, PA*, 564 F.3d 636, 657–58 (3d Cir. 2009) (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694–95 (1978)). The existence of a policy is shown when a decisionmaker with final authority "issues an official proclamation, policy, or edict." *Watson v. Abington Twp.*, 478 F.3d 144, 155 (3d Cir. 2007). Custom can be demonstrated by "showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990).

Here, the Amended Complaint alleges that the Eighth Amendment violations occurred when "Plaintiff was denied adequate medical care pursuant to policies, practices, or customs of [Defendant Rutgers], including the failure to provide timely medical evaluation and treatment

following use-of-force incidents" and that Rutgers' "policies, practices, or customs were the moving force behind the denial of constitutionally adequate medical care to Plaintiff." (AC ¶¶ 79–80.) Specifically, Plaintiff alleges nurse Kim, employed by Rutgers, "knew that Plaintiff was actively bleeding and in need of care and refused to provide even basic medical treatment." (*Id.* ¶ 73.) Plaintiff separately pleads that the Bayside State Prison adhered to "a custom and practice of excessive force" but brings his *Monell* claim only against Rutgers, a healthcare services provider to inmates at the prison contracted by the NJDOC. (*Compare id.* ¶¶ 54–55, *with id.* ¶¶ 5, 77–82.)

Plaintiff does not allege how such unconstitutional policies, customs, or practices were effectuated, let alone who the decisionmaker with the final authority to promulgate the discriminatory policies, practices, and customs was or detail as to any well-settled and permanent custom. *Contra Est. of Roman v. City of Newark*, 914 F.3d 789, 798–99 (3d Cir. 2019) (finding amended complaint sufficiently pleaded municipal custom of "warrantless or nonconsensual searches" given allegations regarding multiple complaints against officers, imposition of supervision of a federal monitor overseeing arrests and searches, and retroactive consent decree between the United States and the City of Newark). Instead, Plaintiff relies on a single incident referenced in a complaint filed nine years ago in a case that was ultimately dismissed as the sole factual support to Rutgers' alleged custom or policy of denying medical care despite an inmate's medical needs. (AC ¶¶ 56–57, 78–80.) This is not enough to support an official policy or custom of unconstitutional conduct by Rutgers. *See, e.g.*, *Gonzalez v. Borough of Red Bank*, No. 18-13009, 2020 WL 2029338, at *10 (D.N.J. Apr. 28, 2020) (holding that "a plaintiff cannot simply rely on the fact that a number of complaints or lawsuits was [sic] filed" to show custom or policy). Neither is the unfortunate footage of inmates being attacked by unidentified prison officials in 2024 at Bayside State Prison enough to demonstrate any Defendant's official proclamation, policy,

or custom such that it was the "moving force" behind Plaintiff's injury. (AC ¶¶ 54–57); *see Fong v. City of Newark*, No. 22-7243, 2025 WL 2538864, at *3 (D.N.J. Sept. 4, 2025) ("The policy or custom must either violate the Constitution itself or be the '"moving force"' behind the constitutional tort' of the municipality's employee." (quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1027 (3d Cir. 1991))); *see also Ingram v. Twp. of Deptford*, 911 F. Supp. 2d 289, 302–03 (D.N.J. 2012) (emphasis added) ("No New Jersey decision has been found to suggest that a single prior instance of excessive force by another officer in the same department suffices to give rise to municipal liability . . . . Citing one single past incident of excessive force *by officers not defendants to the present action, with no indication that the two incidents occurred within any reasonable window of time, and with nothing whatsoever to link the two incidents*, is insufficient to plead a policy or custom for excessive force in a *Monell*-type claim.").

It follows that Count IV of Plaintiff's Amended Complaint is dismissed as well.

**CONCLUSION**

For the reasons stated above, Defendants' Motions to Dismiss the Amended Complaint are **GRANTED WITHOUT PREJUDICE**. Plaintiff shall have thirty (30) days to file a Second Amended Complaint. An appropriate order follows.

/s/ Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk
cc: Parties
Jessica S. Allen, United States Magistrate Judge